HEIRS OF SALAS, PLAINTIFFS AND APPELLEES, *v.* QUINTERO, DEFENDANT AND APPELLANT.

APPEAL from the First District Court of San Juan in an Action for Ratification of Contract, Etc.

No. 2813.—Decided June 16, 1924.

LEASE—RATIFICATION—PURCHASE AND SALE.— A purchaser who had knowledge that the property was leased and, acting within the lease, accepted from the original lessee and his successors in interest payment of monthly instalments of rent in accordance with the said contract, can not refuse to execute with the latter a deed ratifying the contract merely because as purchaser he was not bound by the contract of his vendor, or because there was no independent, new or additional consideration, or because in case of such additional compensation a new contract arose and the old one ceased to exist.

The facts are stated in the opinion.

*Messrs. Guerra Mondragón & Soldevila* for the appellant.
*Mr. E. Acuña* for the appellees.

MR. JUSTICE HUTCHISON delivered the opinion of the court.

Plaintiffs, appellees herein, brought suit to compel the execution of a public instrument by defendant, the purchaser of certain demised premises, in order that plaintiffs, as the heirs and successors in interest of the deceased lessee, might place upon record the evidence of their rights under the preexisting lease.

The complaint sets forth, among other things (italics ours):

"That on September 15, 1916, Zoila Dolores Salas Castro, together with her brother Francisco Javier and her sisters Catalina and Juana Inés Salas Castro, was each the owner and tenant in common of an undivided one-fourth of the following property (describing it):

"3.—That on the said fifteenth day of September, 1916, the said Zoila Dolores Salas Castro entered into an agreement of lease with Francisco J. Salas Castro, predecessor in interest of the plaintiffs herein, assigning to him her undivided interest in the before described property for a term of ten years or until September 15, 1926, for and in consideration of a rental of $350 the first year and $420 each of the remaining nine years, upon condition that if during the term of said lease the said property should be partitioned

among the coowners, the part awarded to the lessor should continue subject to the terms of the lease and that the lessee should be empowered to record the lease in the registry of property.

"4.—That Zoila Dolores Salas Castro died on November 6, 1919, leaving an open will executed on August 22 of that year, making Juan Francisco Crespo y Salas her only heir, and that the latter, in such capacity and in compliance with express instructions from the testatrix, by deed of July 30, 1920, and in combination with the lessee Francisco J. Salas Castro, affirmed and ratified the agreement of lease referred to in the third clause hereof.

"5.—That later, or on July 14, 1920, the said Juan Francisco Crespo y Salas sold and transferred to the defendant Demetrio Quintero y Salas his undivided ownership of one-fourth of the property described in the first clause of this complaint.

"6.—That on October 3, 1920, defendant Demetrio Quintero Salas, together with the other cotenants of said property at that time, namely, Catalina and Francisco Javier Salas Castro, Rafael Arrieta, Juan Francisco Salas and defendant Demetrio Quintero Salas, proceeded to make the physical partition of the said property of 144 acres, awarding to the defendant in settlement of his ownership of one-fourth a parcel of land (describing it).

"7.—That as and from the said third day of October, 1920, plaintiffs' predecessor in interest, Francisco J. Salas Castro, with the *consent of the grantee* of the above described piece of land, defendant Demetrio Quintero Salas, *continued in the use and enjoyment of the leased property, paying him the agreed rentals in accordance with the original contract.*

"8.—The plaintiffs allege that *as heirs and successors of the lessee* Francisco J. Salas Castro and *with the consent of the defendant* Demetrio Quintero Salas *they have continued uninterruptedly and continue at present in the use and enjoyment of the leased property, paying the rental due under such lease to the said owner, Demetrio Quintero, who receives the same to his satisfaction.*

"9.—That neither Francisco J. Salas Castro nor his heirs and successors, plaintiffs herein, have succeeded in procuring *the admission to record of the said agreement of lease in the registry of property,* for after the physical partition of the property was made the defendant has refused to execute in their favor the proper public instrument of ratification of said agreement; and the plaintiffs contend that such ratification is necessary *to enable them to make said record in the registry of property* of the parcel of 37.8435

acres described in clause 6, *supra,* which was awarded to the de-
fendant and is the object of the alleged agreement of lease."

Defendant appeals from an adverse judgment and says
that—

"1.—The district court erred in overruling defendant's de-
murrer;

"2.—The district court erred in holding that by receiving cer-
tain rentals the defendant agreed to observe the lease entered into
by the former owners of the part in common acquired by the de-
fendant.

"3.—The judgment is contrary to the evidence, and therefore
the district court erred in not dismissing the complaint.

The theory of the first assignment is that the com-
plaint does not state a cause of action, in that it does not
allege knowledge and ratification by defendant of the pre-
existing lease, does not show any "express agreement to
leave in force the lease," or that the purchaser had "as-
sented and obligated himself to respect it." Similar ex-
pressions throughout the brief for appellant, as well as in
the third assignment, *supra,* show that defendant did not
misunderstand the theory of the complaint as involving an
implied waiver by defendant of his statutory right to ter-
minate the original lease.

Section 1474 of the Civil Code says that:

"The purchaser of a leased estate has a right to terminate the
lease in force at the time of making the sale, unless the contrary
is stipulated, and (subject to) the provisions of the Mortgage Law.

"If the purchaser should make use of this right, the lessee may
demand that he be permitted to gather the fruits of the crop cor-
responding to the current agricultural year and that he be indem-
nified by the vendor for the losses and damages he may have suf-
fered."

It is reasonably safe to assume that counsel for appel-
lant are quite familiar with the doctrine of ratification in
its narrow and technical sense as understood in the law of
agency, and equally well acquainted with the British and

American authorities on the subject of void and voidable leases, the distinctions drawn in this connection, and, in the case of a voidable lease, with reference to mere acceptance of rent as differentiated from such acceptance together with other attendant circumstances amounting to confirmation of such lease, including also the theory of a new lease with a new term by implication of law in certain circumstances under the statute of frauds. But the brief for appellant does not touch upon any of these matters, and the logical inference is that counsel conceive the section of the Civil Code, *supra*, in so far as the same is involved herein, to be an enactment that must be construed in the light of its lineage, rather than from the point of view taken by British and American precedents in dealing with the relation of principal and agent and the subject of void and voidable leases.

Looking to the source of our own law, we find that the idea of an *ipso facto* extinguishment of the lease upon the sale of the land is not new.

Law XIX, Title VIII, of the Fifth *Partida* reads as follows:

"*Auiendo arrendado algund ome, o alogado a otro, casa, o heredamiento, a tiempo cierto, si el señor della la vendiere ante que el plazo sea cumplido, aquel que la del comprare, bien puede echar della al que la tiene alogada; mas el vendedor que yela logo, tenudo es, de tornarle tanta parte del loquero, quanto tiempo fincaba que se deuia della aprouechar. Pero dos casos son, en que el arrendador de la cosa arrendada, non podria ser echado della, maguer se vendiesse. El primero es, si fizo pleyto con el vendedor quando gela vendio, que non le pudiesse echar della al que la touiesse logada, fasta que el tiempo fuesse complido, a que la logo. El segundo es, quando el vendedor la ouiesse logada, para en toda su vida de aquel a quien la logara, para siempre también del, como de sus herederos. Ca por qualquier destos casos non la podria enagenar, para poderle echar della al que la tenia logada, o arrendada; ante dezimos, que deue ser guardada la postura.*"

In a case decided by the Supreme Court of Spain on

July 8, 1885, just before the adoption of the Spanish Civil Code, 58 *Jurisprudencia Civil,* 287, certain sublessees were evicted by their lessor, the original lessee, for nonpayment of rent, after a judicial sale of the property. The defense, perfectly admissible and sufficient apparently, if true, seems to have been that the leasehold of plaintiff had been extinguished by the sale of the property; and appellants specified infractions of law as follows:

"1.—Law No. 19, Title 8, Subdivision 5, and the legal precept providing that the lease terminates when, among other things, the right of the lessor to the leased property, ceases; that the said law provides that the purchaser of property leased to another may eject the lessee therefrom; that the latter may claim damages from the vendor, but the law does not say that if the purchaser is silent he approves the contract and is bound by it; that moreover the case at bar does not refer to a sale but to a judgment holding that certain persons are the owners of property belonging to a religious foundation, and that a new state of affairs or conditions being created in connection with such property, all the juridical relations arising prior to that judgment were extinguished and that, according to the ordinary rules of contracts, in order to continue them it was necessary to create them anew; that what happened in this case is that Taleus ceased as lessee and therefore ended the contract of sublease entered into with the appellants; that the latter continued in the physical possession of the mill. The only persons who could prevent this were the new owners; they alone could dispossess them, but Taleus had absolutely no interest in the lease.

"2.—Based on these citations from Law 22, Title 29, subdivision 3, and section 1564 of the Law of Civil Procedure, the judgment holds that Taleus, as lessee, possesses the properties in the name of the person who leased them to him and is a proper person to prosecute proceedings in ouster; but the application made of such legal precepts in said decision in connection with the present case, is erroneous; Taleus cannot be presumed to be a possessor, since that would mean a violation of the doctrine of *res judicata* and he should not be admitted as a proper party to begin ouster proceedings under the provisions of section 1564 of the Code of Civil Procedure.

"3.—The legal doctrine that an action of ouster lies when the lessee does not comply with the stipulated conditions regarding the

payment of rents; that the appellants always faithfully paid Taleus the rental according to the agreed terms, but upon the filing of the writ and the change of possession of the mill and dryer they, the appellants, could not recognize, for the payment of rental, other owners than those represented by Juan Bautista Grau, inasmuch as demand to that effect was made on them by the marshal and by the clerk where the proceedings were brought.''

In disposing of the questions so raised the court said:

''And in holding that the ouster prayed for by lessee Taleus as against the sublessees Insa and Mompó lies, the judgment does not violate Law 19, Title 8, of the Fifth *Partida,* relied on in the first ground of appeal, because this law, which also serves as a basis for the decision, only gives the purchaser of a leased property the right to eject or to sustain the lessee, so that even altho the legal precept constitutes a general rule in all cases involving the transfer of ownership and is not an exception to the well-known principle that he who contracts does so for himself and his successors, still the contract of lease would continue in full force so long as no use was made of such discretional power, and in the present case not only has there been no exercise of that right but the grantees of the property leased have received from plaintiff Taleus the price stipulated in the contract, thus recognizing the existence of the contract entered into with them, although in the then capacity of the religious foundations, now held to belong to them.

''Nor does the judgment violate Law 22, Title 29, of the Third *Partida,* nor section 1564 of the Law of Procedure; for inasmuch as the former contract, the base of the sublease, exists, as stated, as well as the legal reciprocal relation between the owner and the tenant and necessarily between the latter and the sublessees, the right of Taleus to proceed to oust Insa and Mompó immediately they failed to pay the former as their exclusive creditor, the quarterly payment in advance, thereby exposing themselves to the penalty of rescission and ouster to which they agreed in their private agreement of sublease, is unquestionable, neither the judgment granting the properties nor the possession given the new owners or the decree recognizing them as such, raising any bar thereto, since all these acts and proceedings are independent of the lease and sublease and in no wise change the provisions established by law for the framing and enforcement of those, the bases of objection contained in grounds 2 and 3 being therefore inapplicable and for the same reason those of No. 4.

Section 1474, like its prototype, confers upon the purchaser an option with a double proviso, although the two conditions attached are not identical with those specified in the former law. In both instances the Code is somewhat more considerate of the rights of the tenant. A recorded lease for a period of three years is as much within the law as was a grant for life or in perpetuity in the time of the *Partidas*. Instead of a convenant with the vendor at the time of the sale, all that the law now requires is a stipulation, whether contemporaneous with the sale or subsequent thereto, whether express or implied, whether made with the vendor or with the tenant, and whether with or without an independent, new or additional cause or consideration. That was the spirit of the old law, as construed by the Supreme Court of Spain, and the text of the Code, adopting the interpretation so placed upon the *Partidas,* removes whatever limitation might have been found in the letter of the earlier enactment.

Hence, Manresa, at page 640, Vol. 10 of his commentaries says:

"The case may also arise where, the purchaser not having agreed with the seller to waive his right, he may so stipulate in favor of the tenant or lessee in a subsequent act, in exchange, for example, of a pecuniary consideration. In both cases the saving provision contained in the first paragraph of section 1571 will apply, for the vendee having agreed not to terminate the lease, whether such agreement has been made with the assent of the lessor or with that of the lessee, the saving pact contained in the statutory clause is always applicable."

Even in cases wherein the purchaser acquires and has not lost his claim to exemption, no reciprocal privilege of repudiation is extended to the lessee. He is bound by his contract, unless and until released therefrom by some act indicative of an intention on the part of the purchaser to exercise his option. Only in the event of such exercise does the action for damages lie. In the meanwhile the contract

of lease, if the purchaser has knowledge thereof, actual or constructive, continues to subsist. The most that can be said in favor of the purchaser is that he need not institute an ordinary action to terminate the lease, but may resort directly to the summary proceeding for unlawful detainer.

In the absence of any necessity for novation of the original contract, the case of *Lamboglia* v. *School Board of Guayama,* 13 P.R.R., 51, upon which much stress is laid by appellant, is not in point.

In the case at bar, there is no pretense, either in the complaint or in the brief for appellees, of any reliance upon any of the provisions of the Mortgage Law as defeating defendant's right to put an end to the lease. The theory of the complaint is a waiver of that right, and a tacit acceptance and adoption of the preexisting lease, by reason of the acceptance of various instalments of rental thereunder and with knowledge thereof,—an implied stipulation with plaintiffs and with their predecessor in interest, whereby defendant is estopped to assert his statutory right of exemption from the obligation assumed by his vendor as successor in interest to the original lessor.

A lessee has some rights even as against a purchaser of the demised premises. The tenant cannot be required to wait from month to month and from year to year for some intimation as to whether or not the new landlord will exercise his option. Even in the absence of any stipulation or positive act indicating an intention to continue under the lease, and conceding for the sake of argument that mere delay on the part of the purchaser for an indefinite and unreasonable time does not give rise to a presumption of acquiescence in a preexisting lease of which he has actual knowledge, then, at least an action would lie to compel the landlord to elect what course he will pursue and either to relieve the tenant from his contract or else confirm the same in all its parts. And a purchaser who, with knowledge of an existing contract of lease, has accepted instalments of

rental thereunder, without limitation, reservation or mistake of any kind, cannot thereafter be heard to say that he will not reduce to writing the implied obligation flowing from such conduct, because, forsooth, as a purchaser he was not bound by the contract of his vendor, or because there was no independent, new or additional consideration, or because, in the event of such additional compensation, then a new contract arises and the old one ceases to exist.

At bottom, and in so far as practical results are concerned, there is more in common than may at first glance appear between the statutory provision now under consideration and section 2733 of the Louisiana Code, which reads:

"If the lessor sells a thing leased, the purchaser can not turn out the tenant before the lease has expired, unless the contrary has been stipulated in the contract."

There is a difference, of course, but it is more or less superficial, and more apparent than real.

There, the purchaser is bound unless he reserves his right. Here, as elsewhere, the purchaser, if he has knowledge of the existing lease, steps into the shoes of his vendor, unless and until (and herein lies the difference) he elects to exercise his statutory option, in cases wherein that option arises.

Manresa, at page 646, Vol. 10, *supra,* also cites as concordant sections 1503-4-5-6 of the proposed draft of 1851; 1741 to 1751 of the French Code; 1597 to 1602 of the Italian, and sections from the codes of a number of other countries, none of which, however, have we examined.

And on the same page, the commentary closes with the following paragraph:

"We shall not close our commentary of this article without setting forth briefly some critical observations regarding its doctrine, which is certainly not peculiar to our Code since it is the one gennerally accepted at this time. The doctrine appears to us to be unfair; it concerns a landowner who has provisionally ceded the use and enjoyment of his properties to the lessee, and who, during

the period that such use or enjoyment is not his, assigns it under color of the law to a third person, who is nevertheless presumed to be the lawful holder. It treats of a party to a contract in whose hands and at whose option is left the fulfilment or nonfulfilment of a contract which he can avoid by merely selling or pretending to sell to a third party the property he leased to another. It involves, in short, a kind of privilege ceded to capital over labor, since the change of ownership empowers the owner to terminate the lease but does not permit the lessee to do likewise. In course of time the abnormality of this doctrine will become more and more apparent and each of the interested parties will be granted the rights to which he is entitled.''

In this Island, however, where corporations are not permitted to own more than 500 acres of land and the leasing of sugar and tobacco lands on a large scale is more or less common, the law may operate at times as a two-edged sword. This is well illustrated by the case of *López* v. *Central Eureka, Inc.,* 27 P.R.R. 271, wherein the vendors seem to have been cheerfully unconcerned about any liability in damages, and the disadvantage under which a lessee labors must have been painfully apparent to the defendant.

In that case, it is also well to observe, not only was there no stipulation in the deed, but the reference to a preexisting lease discloses, and makes no pretense of any attempt to veil, a deliberate intention already formed in the mind of the purchaser to evict the tenant, if indeed that was not the primary purpose of the transfer.

Another interesting characteristic of the clause last mentioned is that it might very well be regarded as a substantial compliance with the requirements of the Louisiana statute, if the provision already quoted were in force in this jurisdiction.

Again, it may be noted as well here as elsewhere that the mention of a stipulation in our own law is what enabled this court to say in the *Eureka Case:* ''The words of the statute show that the legislators had in mind a case where the purchaser had knowledge of the existence of the con-

tract." And that statement is a key to the conclusion reached by this court in that case.

Bearing in mind the double aspect of section 1474 and the fact that where a stipulation is relied on the recordation feature of the statute is not involved, there is nothing in the previous decisions of this court that necessarily militates against the views here expressed.

In *Sosa* v. *Río Grande Agrícola Co.*, 17 P.R.R. 1106, 1108, after quoting section 1474, this court said:

"By virtue of this section, saving the exceptions, the purchaser has a right to terminate a previously existing lease. Saving the exceptions, the contract between the tenant and the original owner was merely a personal one, and in such cases the idea of section 1474 is to give the purchaser an untrammeled dominion over the purchased property. . . . . The law turns over the property to the purchaser, if he so elects, unshackled, and from the moment the supposed tenant is notified of the purchaser's intention to terminate the lease, as he was in the case at bar, if he continues to hold he does it at the mere sufferance of the real owner. . . . . It was the express purpose of section 1474 to exempt the purchaser from being bound by an existing lease, except under the conditions provided for in said section."

And from *López* v. *Central Eureka, Inc., supra,* at page 273, we take the following:

"Nowhere in the deed (which was duly recorded in the registry) does it appear that the purchaser bound himself to respect the contract of lease made by Margarita. . . . . If the contract of lease is not recorded, then, unless the contrary has been stipulated, the provision of section 1474, giving the purchaser the right to terminate the lease existing at the time of the sale, remains in full force."

But even if appellees were obliged to concede that the lease under which they hold is "voidable," as that term is usually employed to describe a contract that is not absolutely "void," and were compelled to resort to British and American sources for the law governing the instant case, yet they might find some crumb of comfort, by way of implication or otherwise, in a number of precedents wherein

no relation of principal and agent was involved, either in the fact or in the *ratio decidendi,* or if remotely suggested in the former then expressly eliminated from the latter. Without going into this feature of the matter at this time, we may refer in passing to *Jenkins, ex dem. Yate,* v. *Church,* 98 English Reports Reprint, 1199; *Doe* v. *Butcher,* 99 *id.* 36; and *Anderson* v. *Conner,* 43 Misc. 384.

Obviously, in the instant case, the complaint might have been more specific, and the defendant upon motion would have been entitled to have it made so before answering. Perhaps a demurrer for uncertainty and ambiguity would have been sufficient. But consent to the continued possession, not only of the original lessee but also of his heirs and successors in interest, together with the payment and acceptance of rent, in both instances and in accordance with the terms and provisions of the original contract of lease, plainly implies both knowledge and acceptance, adoption or confirmation of that agreement; and the complaint, however defective it may be, can hardly be said not to state facts sufficient to constitute a cause of action, if we are to follow the rule of liberal construction that obtains under our system of code pleading.

The court below did not hold, as insinuated in the second assignment, that the mere acceptance of rent amounted to a confirmation of the original lease. The trial judge found as a matter of fact that the defendant "knew the contract," and "acted within it;" also that the payments mentioned in the receipts signed by defendant represented instalments of rental thereunder. The purpose and effort of appellant as stated by counsel in the brief is to show that the rentals received by defendant "were decidedly other than, and not, as erroneously found by the court below, those stipulated in the contract of the former owners."

Defendant is the nephew of one of the plaintiffs, and a double first cousin of the others. He lives upon the property. At the time of the partition he and his mother were

the owners of the two houses standing upon the land, of the naked legal title or reversion of a one-fourth undivided interest and, subject only to such rights as the lessees might have, of another two-fourths undivided interest, leaving outstanding in the names of other parties only a one-fourth undivided interest and the usufruct of another one-fourth, neither of which is involved herein.

Defendant received a small legacy under the same will whereby his vendor acquired the one-fourth interest subject of this suit. The lease is mentioned in the will in such a way as not to escape the attention of the most casual reader. Both the will and the instrument of partition were drawn by the same notary who, as attorney for the defendant, was consulted by him as to the legal effect of the presentation of the lease in the registry of property, in view of the registrar's refusal to record the same, and the entry of the usual cautionary notices.

This same attorney addressed two letters to plaintiff in terms as follows:

"January 28, 1921.—To the Succession of Don Francisco J. Salas, represented by Don Vicente Salas—Toa Baja, P. R.—Gentlemen: At the request of my client, Don Demetrio Quintero, I beg to advise you formally that upon the termination of current crop of 1921 you will be required to vacate and leave at the free disposal of its owner, Sr. Quintero, that part of the 'Rincón Grande' property which you are holding and using for the planting of cane under a lease made by the late Zoila Dolores Salas in favor of Francisco Salas, your predecessor in interest, prior to the physical partition of the said 'Rincón Grande' property. It is unnecessary to remind you, since you are already aware of the fact, that Mr. Quintero purchased these lands with the object of operating them himself and not renting them and while he is prepared to await the cutting of the cane which you have planted, it never occurred to him to rent you the lands, much less acknowledge the lease which, so far as he is concerned, is without legal force or effect. This will therefore serve as a notice to the ends indicated.—Respectfully _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _, Attorney for Mr. Quintero."

"April 5, 1921.—To the Succession of Don Francisco J. Salas,

represented by Don Vicente Salas, Toa Baja, P. R.—Gentlemen: I am instructed by my client, Demetrio Quintero, to call your attention to the contents of my previous letter of the 28th of January last, to which you have not seen fit to reply. Mr. Quintero has been informed that you are making ready to continue the 1922 planting in that part of the 'Rincón Grande' property which belongs to him and which you are now holding under his sufferance for the purpose of harvesting this year's cane planted by you. Allow me to repeat the formal warning contained in my former communication to the effect that under no circumstances will Mr. Quintero permit you to continue to occupy these lands after you have cut this year's cane. In view of this warning you must in no manner undertake to prepare land for planting but, on the contrary, must make ready to vacate the property. Mr. Quintero is desirous of arranging this matter amicably since the parties involved are relatives, and he is sure that when you are convinced of the real facts he will be spared the necessity of resorting to other measures to assure him the free enjoyment of a property to which you have no right whatever.— Respectfully_____ Attorney and Notary.''

Plaintiffs say that they never received either of these communications. Whether they did or not is a matter of small importance, inasmuch as defendant admits having signed two receipts which read thus:

``Received from don Francisco J. Salas the sum of eighty dollars for the lease of a piece of land that formerly belonged to doña Zoila D. Salas, corresponding to the months of September and October.— Demetrio Quintero.—Sept. 17, 1920.''

``Received from doña Vicenta Quintero the sum of one hundred and twenty dollars ($120) for the lease of a parcel of land belonging to me, corresponding to the months of November, December and January, 1921.—(sd.) Demetrio Quintero.—March 4, 1921.''

It does not appear that defendant took the precaution to obtain the opinion of his attorney as to the legal effect of these two slips of paper before signing them.

Counsel for appellant emphasizes the fact that the monthly rental mentioned in the two receipts is in excess of the rate specified in the lease. But plaintiffs explained this as due to the rise in the price of sugar.

Defendant's version was that he had agreed to permit plaintiff to harvest the standing crop of cane, and at first declined to accept any rental for the few months required for this purpose, but finally yielded to pressure on the part of plaintiffs. But this does not explain why plaintiffs insisted so strenuously upon payment not only of the rental stipulated under the original contract, but also of an additional $5 per month, notwithstanding their statutory privilege of removing the cane without the necessity of any such payment. On the other hand, the attitude of defendant, or at least of his father, with reference to the threatened repudiation of the lease was a peculiarly persuasive inducement to the slight increase in the rate, if, as claimed by plaintiffs, it was understood to be a mere modification of the instalments prescribed by the original contract.

The advance in the price of sugar not only made this modification feasible, but is also perhaps the most logical explanation of the whole controversy.

The receipts refer to a lease; and the earlier of the two documents mentions the names not of defendant's immediate predecessor in interest, but that of the original lessor, as a former owner.

The vague and evasive testimony of defendant evidently did not satisfy the court below, nor does it satisfy us, as to the existence of any new agreement of lease. In the absence of any other such agreement the natural inference is that the rental paid and accepted was that accruing under the previous agreement, after the slight modification thereof as to the amount.

Defendant's knowledge of the existence of the previous lease practically excludes the possibility of any other conclusion. Not only do the letters and the testimony of defendant's former legal adviser, to say nothing of the other circumstances above mentioned, leave little or no room for doubt upon this point, but the father of defendant, who

first notified plaintiffs of an intention to repudiate the lease, admits such knowledge.

From the cross-examination of this witness, we take the following extract:

"Q.—So that when you told him that, Mr. Quintero knew that they occupied the property—that they were in possession of the property? A.—Yes, sir.

"Q.—And under contract of lease? A.—As to that I do not know.

"Q.—Prior to that time did you not know that the property had been owned for a long time by the Salas Succession? A.—They had leased it.

"Q.—So that when you purchased it you knew that it was leased to the Salas Succession? A.—He said that he had rented it. I do not know whether it was leased or in what manner he held it, because he was first in possession without lease and it was afterwards that he leased it.

"Q.—How long was he in possession under lease? A.—I should say, although I have no data as to the date, approximately from seven to eight years.

"Q.—All that time the Salas Succession has been in possession? A.—Yes, sir."

Any notice given by this witness was received after the payment and acceptance of rent. But, even otherwise, there is no evidence of any authority in the father to speak for the son.

Defendant himself testified to a verbal notice given by him to the predecessor in interest of plaintiffs, upon his death bed. But all reference to this incident was omitted by defendant upon his first appearance as a witness, and the conversation seems to have occurred, if at all, after, or at most contemporaneously with, the signature of the receipt dated September 17, 1920.

These attempts at repudiation, therefore, like the letters from defendant's attorney, came entirely too late.

For the purposes of this opinion it may be conceded, without holding, that the purchaser of real estate, with ac-

tual notice of the existence of a lease for ten years, evi-
denced by a public instrument containing an express pro-
vision for continuance in the event of partition, and duly
ratified or confirmed by his vendor although not mentioned
in the deed of conveyance nor in the subsequent instrument
of partition, is not bound by the terms of such previous
contract,—but he is put upon inquiry as to its contents, at
least in so far as the exercise of his statutory privilege of
repudiation is concerned; and he can not be permitted to
blow first hot and then cold by accepting rental thereunder
without any qualification or reservation whatever, and there-
after serving a peremptory notice to quit. He cannot "eat
his cake and keep it too."

The judgment appealed from must be

*Affirmed.*

Chief Justice Del Toro and Justice Franco Soto con-
curred.

Justices Wolf and Aldrey dissented.